**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

RONALD L. GREEN,

        Plaintiff,

  v.

JACOB J. LEW,
Secretary, Department of Treasury,

        Defendant,

Case No. 2:13-cv-00740-KJD-VCF

**ORDER**

Presently before the Court is Plaintiff Ronald L. Green's Motion for Summary Judgment (#11). Defendant Jacob J. Lew filed a response in opposition (#18) to which Plaintiff replied (#23). Also before the Court is Defendant's Motion for Summary Judgment (#19). Plaintiff filed a response in opposition (#24) to which Defendant replied (#31). Also before the Court is Plaintiff's Motion to Strike (#22). Defendant filed a response in opposition (#25) to which Plaintiff replied (#26). Finally before the Court is Defendant's Motion to Extend Time (#13). Plaintiff filed a response in opposition (#14) to which Defendant replied (#16).

I. Background

Plaintiff is an African-American male who suffers from Dysthymic Disorder. Plaintiff worked for the Internal Revenue Service ("IRS") in Las Vegas, Nevada, as a GS-11 Revenue Agent. While working for the IRS, Plaintiff applied for a GS-12 Anti-Money Laundering Examiner position on or about July 5, 2005. There were two vacancies available for the GS-12 Examiner position. Once all applications were received, a "Best Qualified" list was created for the vacancies. The applicants on the "Best Qualified" list were Caucasian, Hispanic, and

1   African-American. There was no data on one applicant's race. Plaintiff was tied for second on
2   the "Best Qualified" list. Michael Sells ("Sells"), a Caucasian male who was at the top of the
3   "Best Qualified" list, was selected for one of the vacancies on or about October 31, 2005. The
4   remaining vacancy was not filled. Plaintiff filed an Equal Employment Opportunity ("EEO")
5   complaint on December 12, 2005 after he was not selected for the position.

6   However, Plaintiff was promoted to a different position under the supervision of Herm
7   Moeller ("Moeller") on January 8, 2006. On January 10, 2006, while under Moeller's
8   supervision, Plaintiff requested 478 hours of sick leave. Plaintiff's request for sick leave
9   contained a letter from his physician. When Plaintiff filed the request for sick leave, he was
10  absent from work, so Moeller began to approve Plaintiff's absence on a day-to-day basis. Upon
11  receiving the request, Moeller wrote Plaintiff and requested that he sign a Federal Occupational
12  Health Authorization for Disclosure of Information ("FOH-32") release. Plaintiff did not sign the
13  FOH-32 release or provide additional medical information at that time.

14  As a result, Moeller sent Plaintiff a Directive to Return to Duty and informed Plaintiff
15  that, because he had not provided additional medical information, he must return to work or be
16  charged absence without leave. In response, Plaintiff submitted the FOH-32 release. After
17  receiving the form, Moeller asked Plaintiff to provide additional information to the FOH doctor.
18  Moeller also informed Plaintiff that he would correct Plaintiff's time records to reflect Plaintiff's
19  sick leave. Moeller then approved Plaintiff's sick leave on March 17, 2006.

20  While Moeller was processing Plaintiff's request, Moeller sent a management directive
21  on February 2, 2006 ordering Plaintiff to cooperate with the IRS tax examiner who was
22  conducting an audit of Plaintiff's tax returns. The directive also contained an instruction to
23  consent to an extension of the statute of limitations ("Instruction to Consent"). Cindee Droge, the
24  president of the local union chapter, responded to the directive on Plaintiff's behalf and asked
25  Moeller to clarify or withdraw the directive. Moeller's supervisor answered Droge's questions
26  and withdrew the Instruction to Consent on March 20, 2006.

1    Also during this time, Plaintiff received his annual performance appraisal on February 27,
2    2006, for the period of October 31, 2004 to October 31, 2005, from his previous supervisor
3    Shirley Snider ("Snider"). In his self-evaluation, Plaintiff gave himself a perfect score. Snider,
4    however, gave him the second-highest overall rating of "exceeds fully successful[.]" Plaintiff
5    told Snider that he disagreed with his performance appraisal and wished to have it changed.
6    Snider declined to change Plaintiff's score, but told Plaintiff that he could write a rebuttal. Snider
7    instructed Plaintiff to talk to Moeller, his new supervisor, about writing a rebuttal. Snider
8    directed Plaintiff to meet with Moeller instead of herself because Plaintiff had been recently
9    promoted and Moeller had all of Plaintiff's documentation.

    Also during this time, Snider informed Plaintiff that he may qualify for a temporary
promotion for completing higher graded work. Snider asked Plaintiff to calculate the time he
spent on higher graded work and submit his calculations to her. Snider forwarded Plaintiff's
calculations to an IRS Labor Relations Specialist. Snider also calculated Plaintiff's time spent on
higher graded work using Plaintiff's time sheets. According to Snider's calculations, Plaintiff did
not qualify for the temporary promotion. As a result, Plaintiff did not receive the temporary
promotion at that time. During Plaintiff's EEO proceedings, Defendant acknowledged that
miscalculations may have occurred qualifying Plaintiff for the temporary 120-day promotion.

## II. Standard for Summary Judgment

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment may be granted if the pleadings, depositions, affidavits, and other materials in the record show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material if it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Uncorroborated and self-serving

testimony, without more, will not create a genuine issue of material fact. See Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Conclusory or speculative testimony is also insufficient to raise a genuine issue of fact. Anheuser Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. Once that burden is met, the nonmoving party then has the burden of setting forth specific facts demonstrating that a genuine issue exists. See Matsushita, 475 U.S. at 587; FED. R. CIV. P. 56(e). If the nonmoving party fails to make a sufficient showing of an essential element for which it bears the burden of proof, the moving party is entitled to summary judgment. See Celotex, 477 U.S. at 322-23.

III. Analysis

Plaintiff filed his documents *pro se*. Therefore, the Court must construe Plaintiff's pleadings liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Additionally, the Court holds Plaintiff to less stringent standards than the formal pleadings drafted by lawyers. Id.

In the present case, there are four motions before the Court: (1) Plaintiff's motion for summary judgment; (2) Defendant's motion for summary judgment; (3) Defendant's motion for an extension of time; and (4) Plaintiff's motion to strike Defendant's combined response and motion for summary judgment.

A. Motions for Summary Judgment

Both Plaintiff's and Defendant's motions raise two issues. The first is whether Plaintiff has established a prima facie case for each of his claims. The second is whether Plaintiff has adduced evidence sufficient to establish that Defendant's legitimate reasons for his actions are merely a pretext for discrimination.

1. Plaintiff's Race Discrimination Claims

In his complaint, Plaintiff alleges that Defendant engaged in race discrimination when Plaintiff was not selected for the G-12 Examiner position. Plaintiff also alleges that

Defendant engaged in race discrimination when Moeller processed Plaintiff's request for sick leave, Snider appraised Plaintiff's performance, and Plaintiff did not receive compensation for his higher-grade work. Both parties have moved for summary judgment in their favor on these claims.

### a. Legal Standard

To establish a prima facie case of race discrimination in a non-selection, or failure to promote, claim, a plaintiff must show that (1) he belongs to a protected class, (2) he was qualified for the position to which he wished to be promoted, (3) he was denied a promotion to that position, and (4) the job went to someone outside the protected class. Coghlan v. Am. Seafoods Co. LLC., 413 F.3d 1090, 1094 (9th Cir. 2005).

The requirements to establish a prima facie case for other discrimination claims are: (1) the plaintiff belongs to a protected class; (2) the plaintiff was performing according to the employer's legitimate expectations; (3) the plaintiff suffered an adverse employment action; and (4) other employees with qualifications similar to the plaintiff's own were treated more favorably. Vasquez v. County of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2003).

An employer's action is an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity. Id. at 646. The standard is partly subjective, because it determines whether the action deterred the plaintiff, and partly objective, because it determines whether the action was reasonably likely to deter protected activity. Id. Another employee has similar qualifications to a plaintiff when he or she displays similar conduct or has a similar job. Id. at 641.

The threshold for establishing a prima facie case is minimal and does not rise to the level of a preponderance of the evidence. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002). If the plaintiff's burden is met, the defendant must then show that he had a legitimate, nondiscriminatory reason for the adverse employment action. Coghlan, 413 F.3d at 1094.

1           Once the defendant has met his burden, the plaintiff must establish that the

2 defendant's reasons are merely a pretext for discrimination. Id. The plaintiff may satisfy this

3 burden by relying on direct or circumstantial evidence. Id. at 1094-1095. Direct evidence

4 typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the

5 employer while circumstantial evidence requires an additional inferential step to demonstrate

6 discrimination. Id. at 1095. Circumstantial evidence may be shown affirmatively through

7 information that sufficiently shows bias, or negatively through information that shows that an

8 employer's proffered explanation is unworthy of credence. Id. If a plaintiff seeks to establish

9 pretext through circumstantial evidence, the evidence must be specific and substantial.

10 Villiarimo, 281 F.3d at 1062.

11           b. Plaintiff's Non-selection for Promotion

12           Plaintiff brings a single claim against Defendant for his non-selection to the G-12

13 Examiner position. There were two vacancies for this particular G-12 Examiner position; the first

14 was filled by Sells, a Caucasian male, while the second remained vacant. In light of Plaintiff's

15 *pro se* status, the Court will consider both vacancies in its analysis of Plaintiff's non-selection

16 claim. Therefore, the Court first looks to see if Plaintiff established a prima facie case for each

17 G-12 Examiner position vacancy.

18           Plaintiff has not established a prima facie case of discrimination for the second

19 vacancy. Plaintiff's claim fails the fourth Coghlan element because the position did not go to

20 someone outside of Plaintiff's protected class. Instead, that particular G-12 Examiner position

21 remained vacant. The Court, therefore, finds that Plaintiff has not established a prima facie case

22 for the second examiner position.

23           Plaintiff, however, has established a prima facie case for the first examiner

24 position: (1) Plaintiff is African-American, which is a protected class; (2) Plaintiff was likely

25 qualified for the position, because he tied for second on the "Best Qualified" list; (3) Plaintiff

26 was denied the position; and (4) the job went to Sells, who is outside Plaintiff's protected class.

Because Plaintiff has established a prima facie case for the first GS-12 Examiner position, the burden now shifts to Defendant to show that Plaintiff was not selected for legitimate, nondiscriminatory reasons. Defendant asserts that Plaintiff was not selected because Sells was ranked highest on the "Best Qualified" list (#19, Ex. A-5). The hiring official selected the top candidate on the "Best Qualified" list to ensure objectivity (#19, Ex. A-2). Defendant further asserts that Plaintiff was not selected because he was under investigation for misusing his government-issued credit card. (#19, Ex D, pp. 229:14-230:1-12). Facially, Defendant's reasons appear legitimate and nondiscriminatory. Plaintiff must show, therefore, that Defendant's cited reasons are a mere pretext for discrimination.

Plaintiff's response fails to raise direct or sufficient circumstantial evidence that Defendant's reasons are a pretext for discrimination. Most of Plaintiff's response contains mere conclusory statements with little to no authority and analysis. Additionally, Plaintiff's response focuses on disputing semantics and immaterial discrepancies in Defendant's motion (e.g. how many numerical evaluations contributed to the "Best Qualified" calculation).

Plaintiff does not offer direct evidence of discrimination. Instead, Plaintiff asserts that Defendant's explanation that it picked the highest rated candidate is unworthy of credence, because in the previous job posting that Plaintiff applied for, the second highest rated candidate was selected, not the first.  However, Plaintiff almost completely ignores Defendant's second and overriding explanation: the hiring official knew that Plaintiff was being investigated for alleged misuse of his credit card.  Plaintiff neither argues that he was not under investigation nor that the hiring official did not actually believe he was under investigation.

Instead, Plaintiff argues that evidence of the investigation would be inadmissible hearsay and therefore, no evidence of the non-discriminatory reason exists. However, the issue is whether the proffered reason is a pretext for actual discrimination. Whether the hiring official was aware of the investigation and whether the investigation influenced his decision not to hire or promote Plaintiff becomes the crucial issue when examining Plaintiff's claim of

discrimination. Here, Plaintiff has not offered direct or circumstantial evidence that Defendant's reason is a pretext for actual discrimination.  Plaintiff has not denied that there was an investigation or that the hiring official knew about the investigation. The Court finds that Plaintiff did not raise a genuine issue requiring a fact finder to determine whether or not the legitimate non-discriminatory reason proffered for failing to hire Plaintiff was a pretext for actual discrimination. Therefore, the Court grants summary judgment to Defendant on these claims.

### c. Plaintiff's Sick Leave Request

Plaintiff alleges that Defendant engaged in race discrimination when Moeller processed Plaintiff's request for sick leave. Plaintiff fails to establish a prima facie case of race discrimination because he does not identify another employee with similar qualifications who was treated more fairly. Additionally, even if the Court were to find that Plaintiff met his burden of establishing a prima facie case, Plaintiff fails to show how Defendant's reasons are a pretext for discrimination.  Furthermore, considering that Plaintiff's leave request was ultimately granted, he failed to show that he suffered an adverse employment action.

Plaintiff has the burden of showing that there was a similarly situated employee that was treated more favorably. See Vasquez, 349 F.3d at 640.  Plaintiff may meet this burden by producing evidence that an employee who is outside of Plaintiff's protected class and who filed a request for extended sick leave was treated more favorably than Plaintiff. See Id. at 641.

Plaintiff asserts that Joan King ("King"), a Caucasian female with no prior EEO activity, is similarly situated to Plaintiff because she requested more than three consecutive sick days (#11, p. 9). Plaintiff argues that, according to his handbook, sick leave requests that are more than three consecutive days must be processed in the same manner. Id. Plaintiff finally asserts that King was treated more favorably than Plaintiff when her request was processed. Id.

The IRS handbook guidelines do not necessarily establish that King was similarly situated to Plaintiff. Both Plaintiff and Defendant merely assert that King requested sick leave for more than three consecutive days, but neither party informs the Court how long that absence

8

1 actually was (#11, p. 9, #19, p. 18). This ambiguous block of time could either be very similar to,
2 or very different from, Plaintiff's twelve week request. Thus, Plaintiff has not met his burden in
3 demonstrating that King was similarly situated.
4       Furthermore, Plaintiff has not shown how King was treated differently than
5 Plaintiff in the present case. Plaintiff asserts: "Moeller did not require King to comply with any
6 of the requirements he imposed on the Plaintiff." (#11, p. 9). However, the evidence in the record
7 does not support Plaintiff's assertion. The evidence states that King used three or more
8 consecutive sick days (#11, PE-01, PE-02). It also states that there were no other employees that
9 requested extended sick leave (#11, US00300). Plaintiff fails to show the Court how King had
10 similar qualities to Plaintiff and how King was treated differently than Plaintiff. Therefore,
11 Plaintiff fails to establish a prima facie case of discrimination for the treatment of his sick leave
12 request.
13       Additionally, even if the Court were to find that Plaintiff established a prima facie
14 case of discrimination, Plaintiff fails to show how Defendant's legitimate reasons for Moeller's
15 actions are a mere pretext for discrimination. Moeller explained that he had never encountered a
16 sick leave request that was as lengthy as Plaintiff's request. In an effort to make an informed
17 decision, Moeller turned to the Labor Relations Division and an FOH doctor for guidance on
18 how to proceed. From that point on, Moeller merely followed the guidance of the Labor
19 Relations Division and an FOH doctor in processing Plaintiff's request. Moeller's deposition and
20 related evidence supports Defendant's proffered legitimate, nondiscriminatory reason. (#19, Ex.
21 E).
22       Plaintiff's response (#24), however, does not argue that Defendant's legitimate
23 reasons are a pretext for discrimination. Instead, Plaintiff's response, once again, mostly focuses
24 on semantics and immaterial discrepancies (e.g. Plaintiff did not "refuse" to sign the FOH-32
25 form, but "respectfully declined").
26

1      Plaintiff does argue that, according to the IRS handbook, he should not have filled
2  out the FOH-32 form. However, Plaintiff's argument is not supported by the evidence. The
3  handbook portion that Plaintiff submitted to the Court states that "[a]bsences of more than 3
4  workdays will be supported by a medical certificate or other administratively acceptable
5  evidence" (#11, US00551). Plaintiff does not explain to the Court why the FOH-32 form could
6  not be utilized as "administratively acceptable evidence." Plaintiff's argument is conclusory.

7      Plaintiff fails to establish a prima facie case of discrimination. Plaintiff has not
8  demonstrated an adverse employment action because he ultimately prevailed in his request for
9  twelve (12) weeks of sick leave. Additionally, even if Plaintiff were to establish a prima facie
10 case, Plaintiff has not shown the Court why Defendant's reasons are a pretext for discrimination.
11 The Court, therefore, grants Defendant's motion for summary judgment on all claims of
12 discrimination surrounding Defendant's request for extended sick leave.

13          d. Plaintiff's Performance Evaluation

14     Plaintiff alleges that Defendant engaged in race discrimination when Snider gave
15 him a less favorable evaluation rating. However, Plaintiff fails to establish a prima facie case of
16 discrimination because Plaintiff does not show how his performance rating constitutes an adverse
17 employment action. Furthermore, Plaintiff fails to establish that Defendant's reasons for
18 providing Plaintiff's evaluation score are a pretext for discrimination.

19     Mediocre performance evaluations, by themselves, do not constitute an adverse
20 employment action. See Lyons v. England, 307 F.3d 1092, 1118 (9th Cir. 2002). A plaintiff must
21 show that the evaluation gave rise to further negative employment action. See Id. In the present
22 case, Plaintiff received the second highest overall performance rating possible (#19). However,
23 Plaintiff does not show how the evaluation gave rise to further negative employment action.
24 Therefore, Plaintiff fails to show how his evaluation constitutes an adverse employment action.

25     Additionally, even if the Court were to find that Plaintiff's performance
26 evaluation constituted an adverse employment action, Plaintiff has not shown the Court why

1   Defendant's reasons are a pretext for discrimination. Snider felt that Plaintiff's evaluation was
2   fair and accurate. Plaintiff has failed to offer direct or circumstantial evidence showing that
3   Snider's opinion of Defendant's job performance was a pretext for discrimination. Therefore, the
4   Court rejects Plaintiffs claims involving his performance evaluation.

5   Plaintiff also alleges that Defendant engaged in race discrimination when Snider
6   declined to meet with Plaintiff to discuss his performance evaluation. However, Plaintiff has not
7   identified any similarly situated employee that was treated differently. Plaintiff received a
8   performance evaluation from Snider that he did not like, and then was promoted to a different
9   position (#19, Ex. E, pp. 99:20-100:4). Plaintiff has not identified another similarly situated
10  employee who met with Snider. Thus, Plaintiff fails to establish a prima facie case for his claim
11  regarding Snider's refusal to meet with Plaintiff.

12  Additionally, even if the Court were to find that Plaintiff established a prima facie
13  case of discrimination, Plaintiff has not shown the Court why Defendant's reason for not meeting
14  with Plaintiff was a pretext for discrimination. After Snider gave Plaintiff his performance
15  review, Plaintiff was promoted to a new position under Moeller, a new supervisor. Plaintiff's
16  files and documents were transferred to Moeller as a part of this process. Defendant's proffered
17  explanation is supported by the evidence (#11, US00320, US00321). Therefore, Plaintiff has the
18  burden of showing that this reason is a mere pretext for discrimination.

19  Plaintiff's response (#24), however, does not address this issue. Instead, it
20  primarily focuses on how Plaintiff received a lower evaluation score than three other Caucasian
21  and Hispanic employees in his group.[1] Plaintiff asserts that Snider also refused to meet with
22  another African-American, Jacqueline Wyatt ("Wyatt"). According to Plaintiff, Wyatt also
23  received a poor performance evaluation score. Plaintiff also asserts that when Wyatt asked to
24  meet with Snider, Snider refused. However, this argument is not properly supported by the

---

[1] Plaintiff conveniently overlooks that his performance evaluation was still quite good, that his score was only slightly lower than the three Caucasian and Hispanic employees, and that he received the exact same score as two other Caucasian employees in his group (#11, US00227, US00228).

11

evidence. The only evidence supporting Plaintiff's assertion is a single page taken from an unidentified, unauthenticated document (#11, US00057). The origin of the document, as well as its purpose and author, are unclear because the document contains no identifying information or explanation. Furthermore, Plaintiff's argument is conclusory and not supported by any authority or analysis. Therefore, the Court finds that Plaintiff has not met his burden in producing direct or circumstantial evidence that Defendant's reasons are a pretext for discrimination. The Court grants Defendant's motion for summary judgment on Plaintiff's claims surrounding the performance evaluation.

e. Plaintiff did not receive compensation for his higher-grade work

Plaintiff alleges that Defendant engaged in race discrimination when Plaintiff was not compensated for his higher-grade work ("the temporary promotion") at the time of his request. However, Plaintiff fails to establish a prima facie case because he does not make any effort to identify a similarly situated employee that was treated differently than Plaintiff.

Additionally, even if the Court were to find that Plaintiff established a prima facie case, Plaintiff fails to show why Defendant's reasons for initially denying Plaintiff's compensation for the temporary promotion are a mere pretext for discrimination. Snider rejected Plaintiff's request because her analysis of Defendant's time sheet suggested that Plaintiff did not qualify for the higher grade work (#19, Ex. E, p. 108:1-18). Plaintiff argues that this is a pretext for discrimination because it was later determined that Snider was incorrect (#11, PE-03). However, Snider's calculation error, by itself, does not show that Defendant's reason was a pretext for discrimination. Thus, the Court grants Defendant's motion for summary judgment for the initial failure to approve the compensation or temporary promotion.

2. Disability Discrimination

In his complaint and motion, Plaintiff alleges that Defendant engaged in disability discrimination when Moeller processed Plaintiff's request for sick leave, Snider appraised

1   Plaintiff's performance, and Plaintiff did not receive a temporary promotion for his higher-grade
2   work.
3                         a. Legal Standard
4          To establish a disability discrimination claim under the Americans with
5   Disabilities Act or the Rehabilitation Act, a plaintiff must show that (1) the plaintiff is disabled
6   within the meaning of the Act; (2) the plaintiff is "otherwise qualified" to perform the essential
7   functions of the job, either with or without reasonable accommodations; (3) the plaintiff was
8   subject to discrimination solely because of the disability. See Zukle v. Regents of the Univ. of
9   Cal., 166 F.3d 1041, 1045 (9th Cir. 1999); Mustafa v. Clark Cnty. Sch. Dist., 157 F.3d 1169,
10  1174 (9th Cir. 1998).
11         An individual has a disability if he has a physical or mental impairment which
12  substantially limits one or more major life activities, a record of such impairment, or is regarded
13  as having such an impairment. Mustafa, 157 F.3d at 1174; 29 C.F.R. § 1630.2(g). In deciding
14  whether an impairment is substantially limiting, courts must consider the nature and severity of
15  the impairment, the duration or expected duration of the impairment, as well as the permanent or
16  long term impact of the impairment. Rohr v. Salt River Project Agric. Imp. and Power Dist., 555
17  F.3d 850, 858 (9th Cir. 2009). At the summary judgment stage, Plaintiff is not required to use
18  comparative or medical evidence to establish a genuine issue of material fact regarding the
19  impairment of a major life activity; rather, a plaintiff's testimony may suffice to establish a
20  genuine issue of material fact. Id. at 858-859. However, to survive summary judgment, an
21  affidavit supporting the existence of a disability must not be merely self-serving and must
22  contain sufficient detail to convey the existence of an impairment. Id. at 859.
23         If a plaintiff establishes a prima facie case, then the defendant must articulate a
24  legitimate, nondiscriminatory reason for the employment action at issue. See Snead v. Metro.
25  Prop. & Cas. Ins. Co., 237 F.3d 1080, 1093 (9th Cir. 2001). If the defendant articulates
26

1  legitimate, nondiscriminatory reason, the plaintiff must show that the employer's reason is a
2  pretext for discrimination. Id.

### b. Plaintiff's Claims

Plaintiff meets the first two requirements of a disability discrimination claim. However, Plaintiff fails to establish a prima facie case of disability discrimination because he fails to show that he was subject to discrimination solely because of his disability.

Plaintiff alleges that he is disabled with severe depression (#1; #19, Ex. B-2). Plaintiff has included a doctor's letter describing his condition (#11, US00263) as well as his own affidavits (#11). For the purposes of surviving summary judgment, Plaintiff has sufficient evidence to establish a genuine issue of material fact as to whether Plaintiff is disabled within the meaning of the Disabilities Act or the Rehabilitation Act. Plaintiff's evaluation review (#11, US00076) also suggests that Plaintiff is able to perform the essential functions of his job. However, Plaintiff fails to show, for any of his disability discrimination claims, that he was subject to discrimination solely because of his disability. Plaintiff, therefore, fails to establish prima facie cases of disability discrimination for his claims. Furthermore, even if Plaintiff had established prima facie cases, he fails to offer any direct or circumstantial evidence that Defendant's reasons are a mere pretext for discrimination. Therefore, the Court grants Defendant's motion for summary judgment on Plaintiff's disability discrimination.

### 3. Retaliation

In his complaint, Plaintiff alleges that Defendant engaged in retaliation for EEO protected activity when Plaintiff was not selected for the G-12 Examiner position. Plaintiff also alleges that Defendant engaged in retaliation for EEO protected activity when Moeller processed Plaintiff's request for sick leave, Snider appraised Plaintiff's performance, and Plaintiff did not receive compensation for his higher-grade work.

///

///

a. Legal Standard

To establish a prima facie case of retaliation, a plaintiff must establish that (1) he undertook a protected activity under Title VII of the Civil Rights Act, (2) his employer subjected him to an adverse employment action, and (3) the plaintiff was subjected to an adverse employment action because of his participation in the protected activity of the adverse employment action would not have occurred but for that participation. U. of Texas S.W. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2532-34 (2013); Vasquez, 349 F.3d at 646. Title VII retaliation claims require proof that the desire to retaliate was the "but-for cause" of the challenged employment action. Nassar, 133 S. Ct. at 2534. "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Id. at 2533.

If a plaintiff establishes a prima facie case, then the defendant must articulate a legitimate, nondiscriminatory reason for the employment action at issue. See Vasquez, 349 F.3d at 640. If the defendant articulates legitimate, nondiscriminatory reason, the plaintiff must show that the employer's reason is a pretext for discrimination. Id.

b. Protected Activity and the Causal Connection

Plaintiff's allegations fail to establish prima facie cases of retaliation because they do not establish a causal connection between Plaintiff's protected activity and Defendant's actions. Plaintiff asserts that his protected activity was chairing the IRS' Mountain States Diversity and Equal Employment Opportunity Advisory Committee ("DEEOAC") which was specifically listed on his application for promotion in Vacancy 889.  However, Plaintiff has not adduced facts that establish that he undertook a protected activity.

Specifically, 42 U.S.C. § 2000e–3 provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified,

15

>assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

With regard to protected activity, § 2000e-3 contains both an "opposition clause" and "participation clause." Learned v. City of Bellevue, 860 F.2d 928, 932 (9th Cir. 1988). The opposition clause makes it "unlawful ... for an employer to discriminate against any ... employe[e] ... because he has opposed any practice made ... unlawful ... by this subchapter. 42 U.S.C. § 2000e-3(a). Plaintiff's chairmanship of the IRS' DEEOAC, by itself, does not constitute opposition.  Plaintiff cites no specific action as chair of the DEEOAC that constitutes opposition or participation.  In fact, the only action that Plaintiff cites is his placement of the chairmanship upon his application. There is nothing in the record to suggest that through Plaintiff's chairmanship of the DEEOAC, he was opposing any employment action of the IRS rendered unlawful by Title VII, i.e., discrimination against an individual "because of such individual's race, color, religion, sex, or national origin." Id. Further, as to this claim, Plaintiff cites no action Plaintiff took to utilize "the tools provided by Congress to protect his rights." Vasconcelos v. Meese, 907 F.2d 111, 113 (9th Cir. 1990).  Therefore, Plaintiff has failed to establish a prima facie case of retaliation because he failed to adduce evidence showing that he engaged in protected activity.

Further, Plaintiff has failed to show a causal connection between his service as the chairperson of the DEEOAC and the decision to deny him a promotion.  Plaintiff has adduced no evidence, circumstantial or direct, showing that "but for" his service as the chairperson of the DEEOAC he would have been promoted. Plaintiff has shown no evidence that would require a fact finder to determine if a causal connection existed. Even if the hiring official was aware of his service, Plaintiff has not adduced evidence from which a fact finder could determine that was the motivation for the hiring decision.  Even if there were, Plaintiff has failed to show that the hiring official's legitimate, non-discriminatory reason for the decision, the investigation of

alleged wrongdoing by Plaintiff, was a mere pretext for discrimination. Accordingly, the Court grants Defendant's motion for summary judgment on his retaliation claims and denies Plaintiff's motion.

B. Defendant's Motion for Extension of Time

Defendant's motion (#13) requests an eighteen-day extension to file a dispositive motion. Plaintiff, however, asks the Court to deny Defendant's motion. Plaintiff argues that Defendant failed to timely file his Motion under the Nevada Local Rules. Plaintiff then discusses Defendant's conduct during discovery.

This is Defendant's first request for an extension. Defendant's motion is also timely.[2] Furthermore, Defendant's request would not cause any undue delay, since Defendant's new deadline would coincide with his response due date to Plaintiff's motion for summary judgment. Thus, the Court grants Defendant's motion for an extension of time.

C. Plaintiff's Motion to Strike

Plaintiff filed a motion to strike Defendant's combined motion for summary judgment and opposition (#22). In his motion, Plaintiff contends that, under Federal Rule of Civil Procedure ("Rule") 12(f), Defendant's motion should be stricken from the record because: (1) it is time-barred; (2) fails to comply with Federal Rules of Civil Procedure 56(c) and (e); (3) contains immaterial and scandalous matter that misrepresents the facts; (4) is prejudicial to Plaintiff; and (5) was filed in bad faith.

Rule 12(f) allows the Court to strike an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter from a pleading. FED. R. CIV. P. 12(f). Rule 12(f) only applies to pleadings. See Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983). The purpose of this Rule is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. Id.

---

[2] Plaintiff argues that it is not timely because Defendant's motion was filed on January 27, 2014 and Defendant's due date was January 26, 2014. January 26, 2014, however, was a Sunday. Defendant's motion, therefore, was timely because his due date carried over to the next day.

1    Plaintiff seeks to strike Defendant's motion for summary judgment and opposition to
2    Plaintiff's motion for summary judgment. Neither of these filings are pleadings. Therefore, it
3    would be inappropriate for the Court to strike either filing under Rule 12(f).
4    Furthermore, Plaintiff's first, second, fourth, and fifth arguments are not a motion to
5    strike, but an opposition to Defendant's motion for summary judgment. Because Plaintiff already
6    filed an opposition to Defendant's motion for summary judgment (#24), the Court would be
7    justified if it chose not to consider these arguments. However, in an effort to construe Plaintiff's
8    *pro se* filings liberally, the Court will consider Plaintiff's arguments not dealt with in resolving
9    the motions for summary judgment.

### 1. Defendant's Deadline

11   Defendant filed and served its combined motion and opposition on February 14,
12   2014. Plaintiff argues that Defendant's motion is three days late. He contends that Defendant was
13   properly served on January 21, 2014 through the Case Management/Electronic Case Filing
14   System ("CM/ECF") and was required to file his opposition by February 11, 2014. He also
15   contends that FED. R. CIV. P. 6(d) does not apply when a party is served by CM/ECF.
16   Plaintiff is incorrect. Rule 6(d) adds three days to a deadline if a document is
17   served "by electronic means." See FED. R. CIV. P. 6(d); FED. R. CIV. P. 5(b)(2)(E). CM/ECF, a
18   computer-based filing system, is an "electronic means". Furthermore, even if Defendant's filing
19   were late, that alone may not be enough to strike Defendant's entire motion and opposition under
20   Rule 12(f) given the Court's preference for resolving cases on the merits. See Gibson v.
21   Household Intern., Inc., 151 Fed. Appx. 529, 530 (9th Cir. 2005). Therefore, the Court rejects
22   Plaintiff's deadline argument.

### 2. Immaterial and Scandalous Matter

24   Plaintiff argues that Defendant's assertion that Plaintiff misused his government
25   issued credit card should be stricken under Rule 12(f). Plaintiff's argument, however, is simply a
26   conclusory statement and lacks any supporting law or analysis.

1    Plaintiff cannot have an entire motion, response, or argument stricken simply
2 because it contains something he does not like. Additionally, the IRS investigation of Plaintiff is
3 material because it relates to whether Defendant's actions were a mere pretext for discrimination.
4 The Court, therefore, rejects Plaintiff's argument that the motion contains immaterial or
5 scandalous material.

6    3. Bad Faith

7    Plaintiff finally argues that Defendant demonstrated bad faith. Plaintiff cites Rule
8 11(b), outlines his experience with Defendant during discovery, and argues that Defendant "has
9 made a concerted effort to exploit the vulnerabilities of this pro se Plaintiff and his diagnosed
10 emotional disability, to unnecessarily increase his financial and other costs of litigation and has
11 therefore acted in bad faith."

12    Rule 11(b) does not apply to discovery. FED. R. CIV. P. 11(d). Additionally,
13 Plaintiff's argument, even when construed liberally, does not show the Court why Defendant's
14 motion should be stricken. Instead, it contains a laundry list of perceived transgressions that
15 occurred during discovery. The Court, therefore, rejects Plaintiff's bad faith argument. Plaintiff
16 fails to cite adequate grounds for striking Defendant's motion and opposition. Consequently, the
17 Court denies Plaintiff's motion to strike.

18 IV. Conclusion

19    Accordingly, it is **HEREBY ORDERED** that Plaintiff Ronald L. Green's Motion for
20 Summary Judgment (#11) is **DENIED**;

21    **IT IS FURTHER ORDERED** that Defendant Jacob J. Lew's Motion to Extend Time
22 (#13) is **GRANTED**;

23    **IT IS FURTHER ORDERED** that Defendant Jacob J. Lew's Motion for Summary
24 Judgment (#19) is **GRANTED**;

25    **IT IS FURTHER ORDERED** that Plaintiff Ronald L. Green's Motion to Strike (#22) is
26 **DENIED**;

**IT IS FURTHER ORDERED** that the Clerk of the Court enter **JUDGMENT** for Defendant and against Plaintiff.

DATED this 10th day of September 2014.

_____
Kent J. Dawson
United States District Judge